**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Michael Stephen McCORMICK,
Defendant-Appellant.**

**No. 72–1271.**

United States Court of Appeals,
Tenth Circuit.

Oct. 10, 1972.

Rehearing Denied Oct. 31, 1972.

---

**70**

Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on brief), for appellee.

Nathan Davidovich, Denver, Colo., for appellant.

Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Michael Stephen McCormick was convicted by a jury of knowingly and intentionally possessing marijuana in violation of 21 U.S.C. § 844. It was a lesser included offense within Count II of the indictment which jointly charged McCormick and one Robert Dan Sanchez with knowingly and intentionally possessing marijuana with intent to distribute same in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count I charged them jointly with knowing and intentional importation of marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 18 U.S.C. § 2. After his motion for a separate trial was granted, McCormick was found not guilty on the two principal counts. He was placed in the custody of the Attorney General for a term of one year on the condition that he serve six months in a jail or treatment type institution, with probation to follow.

On appeal, the evidence is viewed in the light most favorable to the Government to determine whether the evidence, direct and circumstantial, coupled with all reasonable inferences, is substantial in justification of the finding of guilty beyond a reasonable doubt. United

States v. Ireland, 456 F.2d 74 (10th Cir. 1972); Chapman v. United States, 443 F.2d 917 (10th Cir. 1971). We proceed to review the evidence in this light.

On November 30, 1971, a 1968 G.M.C. van driven by Sanchez, with McCormick seated in the right front passenger seat, erratically approached a U. S. Immigration and Naturalization Border Patrol checkpoint near Truth Or Consequences, New Mexico, some 98 miles from the Republic of Mexico border. At about 9:45 a. m. Agent Goad and Agent Ford, both Border Patrol and U. S. Customs Inspectors, approached the vehicle. Goad approached from the open window on Sanchez's driver's side and asked Sanchez and McCormick about their citizenship. He looked into the van from the open window but could not obtain a good view. Goad saw a plaid clothes bag and part of what appeared to him to be a large black tarpaulin. Ford was standing near the passenger-side window which had been rolled down about half way. Ford testified that he detected the odor of marijuana from within the vehicle. Ford directed Goad to take the van to a siding for inspection to see "what was under the big plastic bag" in the rear of the van. Ford proceeded to process two vehicles which were waiting behind the van. This required about one minute. He returned to the van. Goad had entered the rear of the van. He noticed an object which he described as a plastic beanbag type chair, about four feet in diameter, capable of concealing at least two aliens. Goad tried to lift the plastic object and in so doing he picked up a cigar-shaped object about a foot long and six inches wide, wrapped in light cellophane paper. When Ford arrived, Goad informed him that he felt the object under the plastic cover. Ford then reached into the van and attempted to lift the beanbag plastic object. He found it to be tied together in a "big-ball" shape. When he grabbed, he pulled out a paper-wrapped brick object. He opened it and determined that it was marijuana. Ford placed both Sanchez and McCormick under arrest. Further search

of the van disclosed the presence of some 164 bricks, equalling about 1,400 pounds of marijuana. Some of the bricks under the plastic cover, wrapped in light colored cellophane, had broken on the ends and were "leaking". Ford, immediately following the arrests, fully informed Sanchez and McCormick of their Miranda rights. Both acknowledged that they understood his advisements. Ford then phoned U. S. Customs officials in El Paso, and the Narcotics Section of the New Mexico State Police, advising of the arrests.

Louis Fraustro, a narcotics agent with the New Mexico State Police, arrived at the checkpoint about noon. He spoke with Goad and Ford and observed each of the items removed from the van, including an airline flight bag from which one marijuana brick and $165 had been recovered. Fraustro fully advised Sanchez and McCormick separately of their rights before interrogating them and they acknowledged that they understood. Sanchez first denied any knowledge of the marijuana but later stated that all of it belonged to him. He told Fraustro that he had placed the marijuana brick in McCormick's flight bag during a stop at a rest area, without McCormick's knowledge. McCormick first denied knowledge of the marijuana but Fraustro testified that later McCormick called him back, at which time McCormick said that the marijuana brick recovered from the flight bag was his and that he had paid Sanchez $150 for it. This interrogation occurred about 2:30 p. m. Fraustro was aware that Sanchez and McCormick were being held for arrival of U. S. Customs agents and that neither had been taken before a magistrate before he questioned them.

Reuben Gomez, Special Agent with the U. S. Customs Service, stationed in Albuquerque, New Mexico, arrived at the checkpoint accompanied by Customs Agent Voliva about 3:00 p. m. He first conferred with Agent Cecil, in charge of the check-point station, and then with Agents Goad and Ford. He viewed each of the marked items recovered from the van. He then interrogated Sanchez and McCormick after fully advising them of their rights, which each acknowledged that they understood. Gomez testified that Sanchez claimed all of the marijuana in a deal he had made with one Manuel Rivera; that Sanchez had picked McCormick up near Las Cruces as a hitchhiker; and that Sanchez had placed both the marijuana brick and the $165 in McCormick's flight bag at a rest area without McCormick's knowledge. Gomez testified that the total of the marijuana bricks amounted to about 1,400 pounds and that Sanchez stated that he was to receive 75 bricks and $700 from Rivera upon delivery. McCormick did not acknowledge to Gomez that the brick found in his flight bag belonged to him.

Gomez and Cecil transported Sanchez and McCormick to Las Cruces where Gomez attempted to contact Magistrate Meninegar about 5:00 p. m. He was informed that Meninegar was out of town. Sanchez and McCormick were detained and taken before Magistrate Meninegar the following morning.

McCormick alleges error in: (1) the admission of certain Government exhibits seized by reason of the alleged illegal search and seizure; (2) admission into evidence of certain inculpatory admissions without proper Fifth and Sixth Amendments advisements, obtained in violation of Rule 5(a) of the Federal Rules of Criminal Procedure; (3) refusal of the Court to admit into evidence an exculpatory statement by Sanchez exonerating McCormick; (4) lack of proper and sufficient voir dire examination; (5) failure in instructing and failure to give certain instructions; and (6) failure to hold 21 U.S.C. § 844 unconstitutional.

I.

■ McCormick argues that Agent Goad, who had detected no odor of narcotics and who was searching only for aliens, had no cause to search further for aliens when he grasped the cigar-shaped object from the black plastic cov-

er. However, nothing in this record supports this argument. Agent Goad, who had been employed with the service for some seven months, had smelled marijuana on only one prior occasion. Goad grasped the plastic cover to determine "what was undernearth it". He did not grasp any other portion of the cover after detecting the brick-like object. He testified that he had felt only the top surface and that he was attempting to remove the cover. After Goad informed Ford of the object he felt under the cover, Agent Ford entered the van and proceeded with the search. It is obvious that Goad, who did not identify the brick object as marijuana, would nonetheless have proceeded to remove the plastic cover in his search for illegal aliens if Agent Ford had not taken over the search at that point.

Title 8 U.S.C. § 1357(a)(3) empowers agents of the Border Patrol to search any vehicle, without warrant, for aliens "within a reasonable distance from any external boundary of the United States". Goad and Ford, as authorized U. S. Customs agents, were empowered to be alert for violations of 21 U.S.C. § 960(a) relating to importation of narcotic drugs into the United States. We have held that 100 air miles from any external boundary of the United States meets the term "reasonable distance" as used in 8 U.S.C. § 1357(a)(3). Roa-Rodriguez v. United States, 410 F.2d 1206 (10th Cir. 1969). *Roa-Rodriguez* reversed the conviction of Rodriguez for unlawful importation of narcotics, holding that the inspection of the trunk of the vehicle for illegal aliens did not constitutionally justify Agent Cheadle's search of a jacket found which, *upon* inspection, disclosed two packages containing about 11 ounces of heroin, when Cheadle had nothing more than a mere suspicion that narcotics might be secreted therein. In United States v. Saldana, 453 F.2d 352 (10th Cir. 1972) and United States v. Granado, 453 F.2d 769 (10th Cir. 1972), the actions of Border Patrol agents well beyond the 100 mile limit, under facts similar to those here in effecting brief de-

tentions and investigations, anchored to suspicious behavior which, while not meeting the "probable cause" requirements for a search or arrest warrant, were nevertheless held to be constitutionally justified under the objective test standard applied in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 29 L.Ed.2d 889 (1968).

Goad had probable cause to search the plastic covered object for the presence of illegal aliens. The discovery of the marijuana bricks under these circumstances does not render his search constitutionally impermissible.

We turn now to the search conducted by Agent Ford predicated upon his original detection of the odor of marijuana, his original view of the plastic object, and the object under the plastic cover felt and described to him by Agent Goad. McCormick filed a Motion to Suppress all of the evidence recovered from the van prior to trial. This Motion and others were the subject of an evidentiary hearing held on January 19, 1972. Agents Goad and Ford testified in detail. Their testimony at that hearing was not in variance with their trial testimony given following commencement of trial on February 3, 1972. McCormick was fully aware before trial that Agent Ford: (a) noticed that Sanchez, the driver, was driving erratically as he approached, and was nervous and acting strange; (b) had detected the odor of marijuana from within the vehicle; (c) had seen the large "ball like" plastic object in the rear of the van; and (d) had smelled marijuana approximately 100 times previous to this occasion. Yet the record is devoid of any evidence in anywise challenging Agent Ford's testimony relating to his detection of the odor of marijuana from within the vehicle. No witnesses were called by McCormick to challenge this testimony. McCormick's attack is exclusively one of argument. He contends that in view of the fact that no narcotics were in "plain view" within the vehicle and that all of the marijuana in the van was within some container that, in

effect, there could not have been any "plain smell" of marijuana by Agent Ford from the passenger window. On cross-examination Ford was asked whether alfalfa, hay and tea smell like marijuana. He responded, "Not to my knowledge." McCormick cites us to Roa-Rodriguez v. United States, *supra*, People v. McGrew, 1 Cal.3d 404, 82 Cal. Rptr. 473, 462 P.2d 1 (1969), and People v. Marshall, 69 Cal.2d 51, 69 Cal.Rptr. 585, 442 P.2d 665 (1968), as authorities in support of his allegation that Agent Ford lacked probable cause to support the subsequent search of the van predicated upon Ford's detection of the odor of marijuana. We are not persuaded that these decisions control on the facts presented here.

█ Immigration officers and U. S. Customs Agents are not limited to investigate solely for the presence of illegal aliens. Valenzuela-Garcia v. United States, 425 F.2d 1170 (9th Cir. 1970). Probable cause must be evaluated in relation to the circumstances as they would have appeared to prudent, cautious and trained police officers. Trusty v. State of Oklahoma, 360 F.2d 173 (10th Cir. 1966); Murray v. United States, 351 F.2d 330 (10th Cir. 1965), cert. denied, 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211 (1966). We have recognized that the detection, by agents with years of experience, of the odor of marijuana from duffel bags concealed in brush, coupled with suspicious activities and conduct, constituted probable cause, justifying later highway warrantless arrests and searches. United States v. Miller, 460 F.2d 582 (10th Cir. 1972). In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) the Supreme Court recognized that trained officers who detected the odor of opium would have sufficient basis to justify the issuance of a search warrant. There must be compelling reasons to justify a search in the absence of a search warrant. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Such compelling reasons have been found to exist in relation to war-

rantless searches of automobiles whenever probable cause exists. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925). These decisions stand for the rule that there must be "exigent circumstances" for warrantless searches. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), this rationale was re-affirmed where the Court said:

> "*Carroll* did indeed hold that 'contraband goods concealed and illegally transported in an automobile . . . may be searched for without a warrant,' provided that 'the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' Such searches had been explicitly authorized by Congress . . . " 403 U.S. at 458, 91 S.Ct. at 2034.

██ Under similar facts as those before us here, the court in Fernandez v. United States, 321 F.2d 283 (9th Cir. 1963) held that an immigration and naturalization service officer was justified in searching under the hood of a car without a search warrant, and seizing five packages of marijuana wrapped in brown paper, when he was familiar with the characteristic odor of marijuana and detected it from under the hood. A border patrol agent who has learned how to identify marijuana by sight or by its odor has probable cause to search and seize and to effect arrests upon discovery of marijuana in a vehicle. See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Gibbs, 435 F.2d 621 (9th Cir. 1970), cert. denied 401 U.S. 994, 91 S.Ct. 1233, 28 L.Ed.2d 532 (1971); Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965), cert. denied 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966); United States v. Frierson, 299 F.2d 763 (7th Cir. 1962), cert. denied 371 U.S.

963, 83 S.Ct. 544, 9 L.Ed.2d 510 (1963); State v. Binns, 194 N.W.2d 756 (N.D. 1972); Boim v. State, 194 So.2d 313 (Fla.App.1967); People v. Sullivan, 18 A.D.2d 1066, 239 N.Y.S.2d 517 (1963). Marijuana is defined as a "narcotic drug" constituting a "contraband article" subject to seizure and forfeiture. 49 U.S.C. §§ 781, 782, 787. Lockett v. United States, 390 F.2d 168 (9th Cir. 1968), cert. denied 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968); United States v. Francolino, 367 F.2d 1013 (2nd Cir. 1966), cert. denied 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967).

We hold that Agent Ford had probable cause to conduct the warrantless search of the van based upon his detection of the odor of marijuana, the suspicious behavior of Sanchez, his prior plain view of the large plastic-covered object, and the description of the object felt by Goad under the plastic cover.

## II.

McCormick moved to dismiss and to quash the admissions, alleging that his inculpatory admission to Fraustro was not properly preceded by Miranda warnings, and further, that it was obtained in violation of Rule 5(a) of the Federal Rules of Criminal Procedure which prohibits the admission of a confession or inculpatory statement obtained during an "unreasonable delay" in arraignment. We hold that the trial court properly denied all such motions. We concur with the trial court findings that: (a) the warrantless search was premised on probable cause; (b) McCormick's admission to Fraustro was properly admitted after full Miranda advisements, and that it was made voluntarily and knowingly; and (c) the time which elapsed between the arrests and arraignments was not "unreasonable" and did not render McCormick's confession inadmissible.

The immigration officers at the checkpoint held Sanchez and McCormick, awaiting customs agents to take them into custody, together with the contraband. Agents Gomez and Voliva received notice of the arrests some time after 10:00 a. m. at their Albuquerque office, some 150 miles from Truth Or Consequences. They departed Albuquerque about noon, arriving at the checkpoint at about 3:00 p. m. The statement given by McCormick to Fraustro was given some five hours after his arrest. Gomez proceeded with all due diligence to present Sanchez and McCormick for arraignment before a federal magistrate in Las Cruces, a drive of about 1½ hours by car. When the magistrate was not available Gomez arranged for their arraignment the following morning upon the return of the magistrate.

In United States v. Keeble, 459 F.2d 757 (8th Cir. 1972), authored by Judge Breitenstein, a period of about 99 hours elapsed between the defendant's arrest and his appearance before a magistrate. After he was given the Miranda warnings, the defendant was interrogated. He gave a written confession about 28½ hours after his arrest. About 70 hours later he was taken before a magistrate. The Court held that post-confession delay is not pertinent to the determination of the voluntariness of a confession. We agree. See also United States v. Halbert, 436 F.2d 1226 (9th Cir. 1970), where the Court held that the provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3501 from Title II, relating to the admissibility of confessions and providing that confessions should not be inadmissible solely because of delay in arraignment, if made within six hours of arrest or during reasonable delay in arraignment, does not imply exclusion of a voluntary confession given more than six hours after arrest or during longer delay. Under Title 18 U.S.C. § 3501(c) the trial judge is to determine whether the six hour delay is "reasonable considering the means of transportation and the distance to be travelled to the nearest available such magistrate or other officer."

McCormick contends that Agent Fraustro failed to comply with the mandates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966) in that although Fraustro did advise him that he had the right to have an attorney present, at that time or at any other time following, he did not inform McCormick that he was entitled to an appointed attorney if he could not afford to hire his own. At the hearing on McCormick's Motions held January 19, 1972, Agent Fraustro testified that he informed McCormick that he had the right to have an attorney present "and that if he could not afford to hire an attorney, one would be appointed to him." At trial Agent Fraustro testified that he had advised McCormick that "he had the right to have an attorney present at that time or any other time following." We are satisfied that Agent Fraustro complied with the Miranda warnings; that McCormick fully understood his rights and voluntarily confessed. There is no evidence of any "working arrangement" or collusion between State and Federal officers designed to obtain McCormick's confession in violation of Rule 5(a). We have held, and reiterate here, that under these circumstances voluntariness is the sole constitutional requisite governing the admission of a confession in evidence. United States v. Davis, 456 F.2d 1192 (10th Cir. 1972). We favorably noted in *Davis* the provisions of 18 U.S.C. § 3501(a) which provide that a confession shall be admitted in evidence if voluntarily given. It requires the trial judge to make the determination after considering specific factors set forth under 18 U.S.C. § 3501(b), the presence or absence of which "need not be conclusive on the issue of voluntariness of the confession."

 McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), resulted in adoption of Rule 5(a) of the Federal Rules of Criminal Procedure. There is no question but that Congress, in the enactment of § 3501(c), *supra*, considered many of the previous court decisions interpretive of McNabb-Mallory as "illogical and un-

realistic" in relation to strict application of the six hour rule. Senate Report No. 1097, 1968, U.S.Code Cong. & Admin. News, pp. 2124–2127. Section 3501(c) does not automatically make inadmissible a confession obtained more than six hours after arrest. That delay is simply a factor which the trial judge must consider in determining voluntariness. We affirm the trial court's finding that McCormick's confession was made voluntarily. Post-confession delay is not pertinent to the determination of the voluntariness of the confession. When the travel distance involved is considered along with the absence of the magistrate overnight, and the diligence of the agents pursuing the matters of investigation and presentment for arraignment under all of the circumstances, we hold that the trial court did not err in admitting McCormick's confession, even though it was made about 20 hours prior to his arraignment. This, we believe, is in keeping with the "balancing test" announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### III.

 We have carefully considered the other contentions raised by McCormick. They are without merit. The trial court did not err in refusing to admit the proffered unsworn statement of Sanchez, who did not personally testify, wherein he absolved McCormick. United States v. Milano, 443 F.2d 1022 (10th Cir. 1971), cert. denied 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971). The record reflects that in any event the statement was cumulative. Agent Fraustro testified that Sanchez claimed all of the marijuana and that he specifically related that he had placed the one marijuana brick and $165 in McCormick's flight bag without McCormick's knowledge. Agent Gomez testified that Sanchez claimed all of the marijuana and that the brick of marijuana and the $165 had been placed in McCormick's flight bag without Mc-

Cormick's knowledge. McCormick did not testify at the trial. These conflicts were matters involving credibility assessment, a function exclusive to the jury.

We affirm.