**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carl Richard MADDOX, Defendant-**
**Appellant.**

**No. 72–1684.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 20, 1973.

Decided Aug. 29, 1973.

Rehearing Denied Nov. 15, 1973.

Don J. Svet, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., on the brief), for plaintiff-appellee.

Jack L. Love, Federal Public Defender, for defendant-appellant.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Carl Richard Maddox was convicted on a charge of possession of marijuana with an intent to distribute in violation of 21 U.S.C. § 841(a)(1). The only point raised on appeal is the legality of the search of Maddox' automobile and the seizure therefrom of the fifty-two pounds of marijuana which formed the basis for his prosecution.

The marijuana in the instant case was recovered from Maddox' automobile during a search conducted at the so-called checkpoint located just out of Truth or Consequences, New Mexico, some ninety-eight air miles north of the Mexican border. The testimony was that Maddox' vehicle was initially stopped at the checkpoint for the purpose of determining whether any aliens were hidden in his vehicle. The border patrol agent who stopped the vehicle testified that he noticed the odor of marijuana as he first conversed with the two occupants of the car. He then directed Maddox to open the trunk of the car, the agent testifying upon trial that, notwithstanding the fact that he had detected the odor of marijuana, he was at the time only searching for aliens, and not marijuana. The agent then went on to testify that as Maddox opened the trunk he looked therein, and though he saw no human being, he did at once espy "a burlap bag * * * partly pulled apart and I could see that it contained what I believed to be marijuana." The agent thereupon arrested Maddox and removed fifty-two pounds of marijuana from the trunk of Maddox' vehicle.

Again we are faced with a constitutional attack on 8 U.S.C. § 1357(a)(3) and 8 C.F.R. § 287.1, which statute and regulation purport to permit searches of vehicle for aliens without warrant and without probable cause by immigration officers within one hundred miles of an external boundary of the United States. The one hundred mile limitation was set by the Attorney General pursuant to the aforesaid statute as being a "reasonable distance from the external boundary of the United States."

The attack on the statute and regulation, under which the Government contends the search and seizure in the instant case is lawful, is predicated on two grounds: (1) The statute and regula-

tion violate the Fourth Amendment under the reasoning of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); and (2) the statute and regulation when applied to the present factual situation violate the Fourth Amendment under the reasoning of the recent case of Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). In the latter regard, we would note that resolution of the instant case was held in abeyance awaiting the decision by the Supreme Court in *Almeida-Sanchez.* Subsequent to the announcement of that decision on June 21, 1973, the parties to the instant proceeding filed supplemental briefs as to the effect of *Almeida-Sanchez* on the disposition of the present controversy. Accordingly, the matter now awaits our resolution.

Each of the two arguments advanced in the instant case has been considered by us in United States v. King, 485 F.2d 353 (10th Cir., filed August 29, 1973). We shall not repeat here that which has been commented upon in some detail in *King.* It is sufficient to state here that in our view *Coolidge* does not dictate that we declare 8 U.S.C. § 1357(a)(3) and 8 C.F.R. 287.1 unconstitutional. *Coolidge* held that the Fourth Amendment requires that a search warrant be issued by a "neutral and detached magistrate," and not by, for example, a state's attorney general. From *Coolidge,* counsel argues that it is equally improper for the Attorney General to determine what is a "reasonable distance" from an external boundary, and that such determination should be by a neutral body. As indicated in *King,* we are disinclined to lift the rule of *Coolidge* out of its factual context and transplant it to a factual setting which is dissimilar in important particulars.

However, as we said in *King,* in our view the holding of the majority in *Almeida-Sanchez* dictates that a warrantless search, without probable cause, of an automobile for illegal aliens at the checkpoint at Truth or Consequences be held violative of the Fourth Amendment

*unless* the checkpoint search be deemed the "functional equivalent" of a border search, as that phrase is used in *Almeida-Sanchez.* From the record before us, we cannot tell whether the checkpoint at Truth or Consequences is, or is not, the functional equivalent of a border search, and this is a matter which should in the first instance be passed on by the trial court. If the search is not the functional equivalent of a border search, then, under Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652 (1914), the marijuana should not have been received as evidence, and, without the marijuana, the Government's case falls.

As in *King,* the Government argues here that the rule of *Almeida-Sanchez* should not be given retroactive effect to the end that Maddox may benefit by it. This argument in our view does not apply to one in Maddox' position. Maddox, like *Almeida-Sanchez,* challenged on constitutional grounds the validity of the statute and regulation throughout the trial court proceedings and has continued to press his challenge on this court as well. And Maddox now asks that he be afforded the same relief as has been afforded in *Almeida-Sanchez.* We agree.

Accordingly, the judgment is vacated and the matter is remanded to the trial court with direction that it make determination after hearing, and upon notice, as to whether the checkpoint at Truth or Consequences is the functional equivalent of a border search. If the trial court shall find that it is, then the judgment and sentence shall be reinstated. However, if the trial court shall determine that the checkpoint at Truth or Consequences is not, the functional equivalent of a border search, then the trial court shall dismiss the case.

BARRETT, Circuit Judge (dissenting):

I respectfully dissent. The essence of the majority opinion, it seems to me, is that Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d

596 (1973), dictates: (a) vacation of the judgment and remand to the trial court with direction, following notice and hearing, that a determination be made as to whether the permanent Immigration and Naturalization Service check point near Truth or Consequences, New Mexico, is the "functional equivalent" of a border search, and (b) if the determination is that the check point is not the "functional equivalent" of a border search that the rule of *Almeida-Sanchez* shall apply retroactively to the end that Maddox and those similarly situated shall benefit by it. I do not agree with either conclusion.

*Almeida-Sanchez* was a 5–4 decision. The majority, with Mr. Justice Powell specially concurring, simply ruled that "roving patrols" of Immigration and Naturalization Service vehicles on a variety of roadways away from the Mexican-United States border within a 100 mile limit without the benefit of search warrants were violative of the commands of the Fourth Amendment. Mr. Justice Powell indicated that the "roving patrols" would be constitutionally permissible under a broad search warrant which he opined would be justified and feasible as ". . . incidental to the protection of the border and draw a large measure of justification from the Government's extraordinary responsibilities and powers with respect to the border." He pointedly observed that the case did not involve the constitutional propriety of searches at permanent or temporary check points removed from the border *or* its functional equivalent. This language leads me to conclude that Mr. Justice Powell would align with the four dissenters in *Almeida-Sanchez* in upholding the reasonableness of the permanent check point warrantless searches within the 100 mile regulatory limit from the border. This, I feel, is buttressed by the dissenting opinion authored by Mr. Justice White who observed: (a) "The judgment of Congress obviously was that there are circumstances in which it is reasonably necessary, in the enforcement of the immigration laws, to search vehicles and other private property for aliens, without warrant or probable cause, and at locations other than at the border."; (b) United States v. Anderson, 468 F.2d 1280 (10th Cir. 1972) and United States v. McCormick, 468 F. 2d 68 (10th Cir. 1972), cert. denied 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973), are correct in their rulings that conveyances may be stopped and examined for aliens without warrant or probable cause when in all of the circumstances it is reasonable to do so; (c) that the search for marihuana conducted upon "discovery", i. e., the detection of the odor from within the vehicle by an officer at the check point, is not violative of the Fourth Amendment by reason of favorable reference to United States v. Anderson, *supra*, and United States v. McCormick, *supra*; and (d) that in the 20 Court of Appeals cases noted dealing with the subject, including *Almeida-Sanchez*, 35 different judges of three Courts of Appeals have found inspection of vehicles for illegal aliens without warrant or probable cause to be constitutional.

Nothing contained in *Almeida-Sanchez* justifies any reference to retroactive application of the rule there applied. Even should it be ultimately determined that the warrantless stops and searches conducted at temporary or permanent check points established by the Immigration and Naturalization Service (whose officers are also designated as U. S. Customs Inspectors) under and by authority of 8 U.S.C.A. § 1357(a)(3) and 8 CFR 287.1 are constitutionally defective by virtue of the Fourth Amendment, which I submit would impede the clear congressional intent to protect all persons legally residing in the United States against the illegal entrance of aliens and the illegal importation of narcotics or other contraband, there is nothing whatsoever, in my opinion, justifying retroactive application of the *Almeida-Sanchez* rule under the guidelines and standards set forth in Halliday v. United

States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969):

In deciding whether to apply newly adopted constitutional rulings retroactively, we have considered three criteria: (1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice. E. g., Desist v. United States, ante [394 U.S.] p. 244 [89 S.Ct. 1030, 22 L.Ed.2d 248]; Stovall v. Denno, 388 U.S. 293 [87 S. Ct. 1967, 18 L.Ed.2d 1199] (1967); Johnson v. New Jersey, 384 U.S. 719 [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966). 394 U.S. at 832, 89 S.Ct. at 1499.