**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Kearn FALLON, Defendant-**
**Appellant.**

**No. 71-1642.**

United States Court of Appeals,
Tenth Circuit.

April 3, 1972.

16

Peter Adang, Albuquerque, N. M., for defendant-appellant.

Mark C. Meiering, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., and Ronald A. Ginsburg, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before HILL, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant was convicted by a jury on July 28–29, 1971, for violation of the Dyer Act. The charge was the interstate transportation of a stolen vehicle, a 1971 Jeep station wagon, with knowledge that it was stolen.

The defendant, who was then age 19, was arrested in Grants, New Mexico, on May 25, 1971, by a member of the Grants Police Force, Officer Monette. He was driving the subject 1971 Jeep station wagon on West Santa Fe Avenue or U. S. Highway 66 at the time. There were four other young people, two boys and two girls, accompanying him. The officer noticed the car and its occupants in heavy traffic and had some difficulty reaching them, but when he did so he ordered them to stop for a license and registration check. Defendant produced a valid Wisconsin driver's license, but had no proof of registration or ownership and because of this the officer requested that they follow him back to the police station so that a check could be run on the vehicle.[1] Defendant complied with the request, and the officer thereupon contacted the National Crime Information Center inquiring as to each of the occupants in the vehicle and the license plates. The response on this was negative. The officer, having become suspicious on close examination of the vehicle, pursued his investigation. He noticed that it had a recent paint job which in his words appeared to have

been applied with a broom. He further said this is often associated with a stolen car. He checked the vehicle in quest of an identification number and discovered that the plate was not in its place. He returned to the station and asked defendant where the number was and was told by defendant that it had been removed, and when the officer asked, "Why," defendant said "I think it is probably stolen." At that point the officer removed Fallon to a separate room and advised him of his *Miranda* rights.

Following this advice defendant accompanied the officer to the vehicle and located the identification plate, searching through his clothing and belongings in order to find it. He handed it to the officer who again inquired through the Crime Information Center and learned that the vehicle was stolen.[2]

Following receipt of information that the automobile was reported stolen, defendant was placed under arrest and booked on state charges of misuse of registration plates and illegal possession of marijuana. It was then between 2:00 and 3:00 p. m. in the afternoon, whereas the original detention occurred at 12:30 p. m. The FBI Office in Albuquerque was telephoned and informed of the situation. However, the Special Agent from Albuquerque did not arrive until the next morning at about 9:30.[3] FBI Agent Volney advised defendant of his rights and proceeded to interrogate him. Defendant merely repeated the account which he had given to Grants Officer Monette to the effect that he had bought the vehicle in Wisconsin for $750.00 and a rifle. He further told Agent Volney that he had received no registration, bill of sale or other evidence of ownership, and when asked by the Agent why not

1. Officer Monette testified that Fallon was not in custody at this point, and that had Fallon refused his request, Fallon would have been allowed to leave, with Monette immediately running a check on the vehicle and notifying the State Police to make a pickup if it were indicated.

2. The initial query had recited the number on the registration plates on the vehicle;

it came out at trial that these plates were taken from Fallon's old vehicle in Wisconsin and simply affixed to the Jeep after Fallon acquired it. Thus, the difference in responses to the two inquiries.

3. Grants is some distance from Albuquerque, about a one and one-half hour drive.

he stated that he figured the vehicle was stolen. The approximate time of this statement was 10:30 a. m. on May 26, 1971. Following the giving of this statement an FBI hold was placed on defendant at Grants and the authorities there were told that a federal charge would be filed. Such a charge was filed on May 28, and defendant was taken before the magistrate on May 29, or four days after his initial arrest.

A pretrial suppression hearing was held and the trial court denied the motion of defendant. At that hearing the officer testified that he had originally stopped defendant and his companions because they were hippies and because he thought they might be runaways. He also testified that he checked the vehicle and its occupants through the National Crime Information Center to find out if they were wanted since a couple of them had no identification and to find out whether the vehicle was stolen. He said that he thought that it might be stolen. The trial court ruled that 18 U.S.C. § 3501 was not applicable since the defendant was in lawful state custody through the time that he was interrogated by the FBI Agent. The court further found that there was no working arrangement between the state and federal officers whereby the detention could have been considered federal. The court further found that the interrogation was valid and that the requirements of Miranda v. Arizona were satisfied.

Defendant seeks reversal on these grounds:

1. That the defendant was arrested without probable cause and that the evidence which was obtained following his arrest was tainted and should have been excluded—that the statements made by defendant should have been suppressed;

2. That defendant was illegally detained because he was not taken before a magistrate during the five days that he was held in the Grants jail and hence that the statements obtained should have been suppressed;

3. That the statement made to Agent Volney should have been suppressed because it was given more than six hours after defendant's arrest and hence it was in violation of 18 U.S.C. § 3501;

4. That the defendant's *Miranda* rights were violated.

### I.

### VALIDITY OF THE ORIGINAL INVESTIGATIVE DETENTION

The government relies on the New Mexico detention statute, §§ 64–3–11 and 64–3–1, N.M.Stat.Ann. (1953) which requires all operators of motor vehicles to exhibit registration and driver's license upon the demand of an officer. We need not determine whether an arbitrary arrest pursuant to this statute would be justified since there was some basis for the officer's, temporarily at least, detaining defendant and the occupants of the vehicle for the purpose of a license and registration check.

The fact that the occupants appeared to have been "hippies" in and of itself did not justify even a preliminary investigation, and it is doubtful whether the statute contemplates purely arbitrary stops, for even an investigatory detention must be based on reasonable ground, if not probable cause. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In United States v. Self, 410 F.2d 984 (10th Cir. 1969), this court approved such routine police detention and investigation. The facts in *Self* were almost identical with those presented here. In the case at bar the individuals and the vehicle were conspicuous. The occupants were young and the car was a new and very expensive one. Whether the unusual paint job was initially noticed is not clear from the record. Nevertheless, there are articulable facts which serve to render the limited investigation reasonable.

### II.

### THE LACK OF RELATIONSHIP BETWEEN THE ARREST AND THE ADMISSIONS

The defendant's first inculpatory statement to the effect that the vehicle

was "probably stolen" was given in connection with the officer's preliminary investigative check in which he sought to ascertain whether an offense had been committed. This statement, according to all the evidence, was given spontaneously, and after that the defendant voluntarily searched the vehicle and produced the identification plate from among his belongings. It was only after *Miranda* warnings had been given that the defendant stated that the Wisconsin license plate on the Jeep had been transferred from his old vehicle.

Accordingly, the assumption that the evidence which developed following the initial investigatory detention should have been ruled tainted and ought to have been suppressed has no merit. The decision of the Supreme Court in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), relied on by counsel, is wholly inapposite. The statement which was there held to have been tainted was obtained following an arrest without probable cause and under highly aggravated circumstances. This was a middle of the night invasion of the defendant's home and involved the breaking down of the door followed by pursuit of the accused to his bedroom where six or seven officers handcuffed him and then obtained the statement held by the Supreme Court to have been tainted by the illegal invasion. After reciting these facts the Supreme Court said:

> \* \* \* Under such circumstances it is unreasonable to infer that Toy's re-

sponse was sufficiently an act of free will to purge the primary taint of the unlawful invasion. 371 U.S. at 486, 83 S.Ct. at 416.

The Supreme Court did not, therefore, hold that every admission or confession obtained after illegal arrest was thereby tainted so as to be subject to exclusion. Rather, the significance of the case is the Court's recognition that the exclusionary rule is to be applied to a confession in circumstances in which the confession is attributable to the unlawful arrest. Almost equally significant is the Court's indication that the taint of the arrest can be overcome if it is superseded by an intervening act of free will by the accused. A distinction is thereby drawn between absolute suppression of the fruits of an unlawful search and qualified suppression of a confession given following an unlawful arrest. Such distinction is not surprising because a search is ruled by the Fourth Amendment which is rigid and absolute in its terms, whereas the confession is governed by the privilege against compulsory self-incrimination standard of the Fifth Amendment which operates with at least some flexibility.

The cases which have considered *Wong Sun* have not always recognized the mentioned distinction.[4] But most of the decisions have treated it as being limited to special circumstances.[5]

In the present case the succession of events which led to the giving of incriminating admissions by the defendant was unlike the statement in *Wong Sun* which

4. See, e. g., United States v. Brookins, 423 F.2d 463 (5th Cir. 1969).

5. Ruiz v. Craven, 425 F.2d 235 (9th Cir. 1970), wherein the confession was held to be inseparably connected with the fruits of the illegal search. Several decisions have held that there were attenuating circumstances. United States v. Venere, 416 F.2d 144 (5th Cir. 1969); Allen v. Cupp, 426 F.2d 756 (9th Cir. 1970) (habeas corpus; 30 hours after arrest before statement made); United States v. Jackson, 448 F.2d 963 (9th Cir. 1971) (dictum); (if arrest were invalid, taint dissipated anyway); United States v. Friedland, 441 F.2d 855 (2nd Cir. 1971) (points out that *Wong Sun* did not create a "but for" rule, but specifically rejected such an approach). Still other decisions have held that the original arrest was valid. See, e. g., United States v. Singleton, 439 F.2d 381 (3rd Cir. 1971); United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970); United States v. Jackson, 448 F.2d 963 (9th Cir. 1971); United States v. Diaz, 427 F.2d 636 (1st Cir. 1970).

was part of the breaking and entering. Here the statements were independent of the arrest and remote (from the original stop and check). To be sure, the admissions would not have been obtained had the defendant not been stopped and detained. However, we do not read the *Wong Sun* case as holding that a "but for" factual connection is legally sufficient. The admissions were not products of and did not flow from the circumstances of the arrest.

## III.

## THE DELAY IN ARRAIGNMENT

■ Was the delay in taking the defendant before a magistrate violative of Rule 5 as construed by the Supreme Court in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, Rehearing denied 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727 (1943)?

We conclude that the trial court's ruling that the defendant's rights were not violated was correct. In United States v. Chadwick, 415 F.2d 167 (10th Cir. 1969), this court in effect held that time in state custody is not to be computed as contributing to unreasonable delay in taking the defendant before a magistrate unless the state custody was utilized by the federal officers as a device to avoid prompt federal arraignment, contrary to Rule 5(a) of the Federal Rules of Criminal Procedure. The court did acknowledge that an in-custody statement obtained in a situation in which state and federal officers were acting in furtherance of a collusive working arrangement would be excluded as in violation of the *Mallory-McNabb* doctrine. In *Chadwick* the court, speaking through Judge Murrah, noted that only one case had been cited, that of United States v. Tupper, 168 F.Supp. 907 (W.D.Mo.1958), wherein a court had excluded a pre-arraignment confession based on an improper working arrangement between state and federal authorities.

In the case at bar the trial court excluded any statement which might have been made following the placing of the FBI hold on defendant at 6:00 p. m. on May 26.

From a careful consideration of all the evidence it does not appear that the delay here was unreasonable from the time of state arrest through the time of obtaining a statement from the accused by the FBI Agent. The FBI was notified between 2:00 and 3:00 p. m. on May 25, 1971, and the Agent responded on May 26 at 9:30 a. m. The distances in rural areas in the Western states give rise to problems quite different from those encountered in the large metropolitan centers, and an FBI agent cannot be expected to be on the ready line so as to instantaneously respond to every call such as that which was made in the present case. Since there was not any long delay, and inasmuch as the statement was not in any way related to the delay—there being no federal-state arrangement to circumvent *Mallory-McNabb*—we hold that Rule 5 as interpreted by the Supreme Court in *Mallory* was not violated.

■ In view of our holding it is unnecessary to consider whether there has been a violation of 18 U.S.C. § 3501. This provision is part of the Omnibus Crime Control Act and provides that a confession is not to be inadmissible solely because of delay in bringing the declarant before a magistrate if a confession is on its facts voluntary and made within six hours immediately following arrest or other detention. Provisos in the cited Act make exceptions to the six-hour limitation when transportation and distance problems are present. Section 3501 was intended to liberalize the *Mallory* and *McNabb* rule. See Senate Report No. 1097, 1968 U.S. Code Cong. and Admin.News, p. 2112 et seq. This it did. In fact, the mandatory aspects of the *Mallory* rule were removed and the

voluntary standard has been introduced. The ultimate determination is now a matter of trial court discretion. It cannot be said then that § 3501 precludes the reception in evidence of a statement which would be admissible under the *Mallory* rule.

Contrary then to the defendant's contention that confessions obtained in the six hours after arrest make the delay unreasonable in circumstances like those at bar, we conclude that § 3501(c), *supra*, does not rule out statements which are otherwise admissible under Rule 5 as construed by *Mallory* and *McNabb*.

There are cases which hold that confessions obtained almost immediately after arrest are inadmissible under the *Mallory* doctrine.[5] But we are not here dealing with situations found in those cases. This court has always considered the nature of the delay, including distance factors, and its relationship, if any, to the obtaining of the confession.

### IV.

 The defendant's final contention that the statement made to the police officer at Grants, New Mexico should be suppressed because it was given prior to the *Miranda* warning must also be rejected. At that point in the investigation the officer was still engaged in a preliminary check. The defendant made the statement that the vehicle was probably stolen in answer to the question as to why the registration number or plate had been removed. Up until this point the defendant had not been placed in custody and an effort was being made by the officer to carry out a preliminary check of the circumstances which up until then had been merely suspicious.

\* \* \*

We conclude that the trial court's rulings were correct and that the judgment should be and it is hereby affirmed.

---

5. See, e. g., Alston v. United States, 121 U.S.App.D.C. 66, 348 F.2d 72 (1965), the case which so exercised Congress at

the time of hearings on the Omnibus Crime Control Act.