**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph B. McDEVITT, Defendant-Appellant.**

**No. 74–1182.**

United States Court of Appeals, Tenth Circuit.

Argued Oct. 23, 1974.

Decided Dec. 26, 1974.

Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff-appellee.

Frank Oliver, Chicago, Ill., for defendant-appellant.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant was convicted of possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1). The defendant moved to suppress the large quantity, 800 pounds, which in the course of a subsequent search, had been discov-

ered in the bed of the rented truck which he had been driving.

The trial court after hearing arguments denied the motion to suppress and this is our problem on appeal. The evidence presented in the motion to suppress is virtually undisputed. An Officer Olson, who made the arrest and search, was the only witness. From his testimony it was established that on December 1, 1973, at about 11:00 a. m. the officer followed a U-Haul truck which was then being driven by the defendant along the highway near Tucumcari, New Mexico. The officer did not notice anything unusual about the truck, but he said he stopped it because he wanted to ascertain whether or not it was carrying goods for hire contrary to the New Mexico Statutes Annot., 64–27–5 and 64–27–8.[1] It turned out that appellant's papers were in order and there was no basis for detention or confinement of appellant. At the request of the officer appellant joined him in the police car. The officer then made an inquiry to his headquarters which communicated with a Washington, D. C. computer service, part of the National Crime Information Center, to ascertain whether appellant was wanted on any charge. Almost immediately the National Crime Information Center notified the officer that McDevitt was subject to being arrested as a Navy deserter. Thereupon, Officer Olson conducted a search of appellant's person and advised him that he was under arrest. The total time between the stopping of the truck and the formal arrest took approximately 20 minutes.

Following this initial encounter, appellant was taken to State Police headquarters which were nearby. He was placed in the custody of Officer Boarman, a narcotics agent. Subsequently, the truck was towed to the headquarters. An effort was made to obtain a warrant to search the truck, but because it was Saturday the officers were unable to locate a magistrate. The aid of the County District Attorney and his assistant was obtained and these two individuals approached the truck for the purpose of inventorying its contents, but before they could carry out this effort Officer Boarman told them that the truck had 800–900 pounds of marijuana in it. It turned out that this was true.

### I.

The stopping of the truck must have been the result of impulse on the part of the officer because appellant was not, to the knowledge of the officer, violating the law. It is appellant's contention that the illegality of this arrest contaminated the subsequent acts of Officer Olson and the attorneys and that as a consequence the search of the vehicle was also illegal.

The ruling of the trial court was that this search was incident to a valid arrest and hence a warrant was not necessary and the search itself was legal. The trial court based this on its view that the original arrest was justified and on the further fact that defendant was wanted by the United States as a deserter from the Navy.

■ In order for an officer to stop and search a vehicle there must exist some basis for suspicion, at least, that the driver has violated the law even though the facts need not be sufficient to establish probable cause. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Stone v. Patterson, 468 F.2d 558 (10th Cir. 1972); United States v. Self, 410 F.2d 984 (10th Cir. 1969). *Cf.* Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ Similarly, an automobile may be stopped for inspection without probable cause, but the act of stopping may not

---

1. The latter provision requires that all common carriers have a certificate of public convenience and necessity.

  Section 64–27–5 provides as follows:
    No common motor carrier of property or passengers shall operate any motor vehicle for the transportation of either persons or property for hire on any public highway in this state except in accordance with the provisions of this act.
    We fail to see that this contributes anything to the validity of the original arrest.

be arbitrary. Thus, our court has said that "even an investigatory detention must be based on reasonable ground, if not probable cause." *See* United States v. Fallon, 457 F.2d 15, 18 (10th Cir. 1972).

The relatively recent decision of the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) involved a stopping by a border patrol officer and the discovery of a large quantity of marijuana.

As in the case at bar, there was no probable cause or even reasonable suspicion to justify the stop. The prosecution sought to support its position by resorting to the border decisions. The Supreme Court, however, differentiated those checkpoint and stop cases involving as they did some semblance of probable cause. It condemned the arrest before it as arbitrary since the stopping and detention was not based on either probable cause or reasonable suspicion.

■ Long ago the Supreme Court in Carroll v. United States, 267 U.S. 132, 153–154, 45 S.Ct. 280, 69 L.Ed. 543 (1925), recognized that the arbitrary and unreasoned stopping of a vehicle is prohibited under the Fourth Amendment. In that case the Court said:

> It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highway to the inconvenience and indignity of such a search.

267 U.S. 132, 153–154, 45 S.Ct. 280, 285 (1925).

■ Unless the police officer was empowered to stop and search every truck regardless of cause or suspicion, it is not possible to justify the original stopping at bar because it does not qualify as a justified temporary inspection incident. *Cf.* Terry v. Ohio, *supra*. The problem is further complicated by the fact that the obtaining of the information from the National Crime Information Center is not separable from the original stopping

and detention. Indeed, the information obtained from the Crime Center appears to us to be the product of the original stopping. Since, then, it is clear that there was not a search incident to a valid arrest, the only possible salvation for the search of the truck lies in the existence of an independent basis for the search of the truck and the discovery of the enormous cache of marijuana.

■ The government's theory is that there was no arrest until word came through from the Crime Center that appellant was wanted as a deserter. We disagree. Appellant was taken to Officer Olson's car and his papers were impounded. The duration of the stay was fifteen to twenty minutes. There is not the slightest evidence suggesting that he was free to go, and it is highly unlikely that he was.

Our Circuit has had several relatively recent cases involving preliminary detentions such as that in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See* for example United States v. Bowman, 487 F.2d 1229 (10th Cir. 1973); United States v. McCormick, 468 F.2d 68 (10th Cir. 1972), cert. denied, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1972); United States v. Lepinski, 460 F.2d 234 (10th Cir. 1972); United States v. Fallon, 457 F.2d 15 (10th Cir. 1972); United States v. Sheppard, 455 F.2d 1081 (10th Cir. 1972); United States v. Granado, 453 F.2d 769 (10th Cir. 1972); United States v. Saldana, 453 F.2d 352 (10th Cir. 1972); United States v. Sanchez, 450 F.2d 525 (10th Cir. 1971); United States v. Self, 410 F.2d 984 (10th Cir. 1969).

In the *Bowman* and *McCormick* cases the officer detected the odor of marijuana emanating from the defendant's automobile.

In *Lepinski* and *Fallon* the accused did not have an automobile registration certificate. In *Sheppard* the defendant produced a stack of counterfeit bills.

In *Granado* the occupants of the vehicle said that they were from Mexico. This was the condition also in *Saldana*. There, one of the occupants stated that he had "swum the river."

In *Sanchez* defendant threw a sack into the woods.

In *Self* the defendant did not have an automobile registration certificate.

■■ In each of the above cases the original stopping of the vehicle and the temporary detention were not invalid. The present case, however, stretches the *Terry* doctrine to the breaking point. The *Terry* concept cannot apply to an arbitrary stopping of a vehicle for the purpose of possible discovery of a law violation. Nor can a stopping together with a lengthy detention be upheld as a valid arrest on the ground that there was no physical seizure; and the fact that it is a routine type of action does not improve the condition. *Cf.* United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Repetition of an unlawful act does not render it valid.

More recent decisions of our court have, consistent with the *Almeida-Sanchez* doctrine, taken a more guarded or cautious view of arrest and detention such as we have here. *See* United States v. King, 485 F.2d 353 (10th Cir. 1973); United States v. Maddox, 485 F.2d 361 (10th Cir. 1973).

## II.

We now consider the final stage of this unusual sequence of events. The record discloses that when Officer Olson took appellant to the police station he delivered him to the custody of an Officer Boarman. Olson's testimony at the hearing on motion to suppress was to the effect that Boarman questioned McDevitt "in a sense." [2]

The testimony sheds little light on the happenings at the police station. We gather that appellant was turned over to Officer Boarman. We also learn that Boarman came out the front door of the police office and advised the District Attorney that appellant had informed them that marijuana was in the vehicle. We are not told whether appellant's statement was a spontaneous type of utterance or whether it was a confession which was laboriously obtained from him. If it was a spontaneous statement it might be sufficiently independent of the illegal arrest to furnish probable cause for the search. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). If the material was in plain view and was thus readily obtained in an inventory of the vehicle, again the discovery might be valid. [3]

2. The questions by the defense lawyer were as follows:

Q. And did you then—did Mr. Boarman then question him:

A. First of all.

Q. Well, just did he or didn't he, first of all?

A. In a sense, yes, sir.

Q. Were you questioning Mr. McDevitt at the time?

A. I believe I asked one question of him.

Q. Were you present at all times while Mr. Boarman was talking to Mr. McDevitt?

A. Not at all times.

Later, on cross-examination by the prosecutor, Officer Olson testified that as he and the two district attorneys were walking to the truck to inventory it, Officer Boarman told them that McDevitt had just told him that there was marijuana in the truck.

Q. Now as you went to the vehicle, what happened?

A. Agent Boarman came out the front doors of the state police office and he advised the district attorney and myself that Mr. McDevitt had just informed him there was marijuana in the vehicle.

Q. Okay. Were you already unlocking the vehicle at that time?

A. We were approaching the vehicle at that time.

3. *Cf.* United States v. Ducker, 491 F.2d 1190 (5th Cir. 1974); United States v. Kelehar, 470 F.2d 176 (5th Cir. 1972); United States v. Edwards, 441 F.2d 749 (5th Cir. 1971); United States v. Pennington, 441 F.2d 249 (5th Cir. 1971); United States v. Boyd, 436 F.2d 1203 (5th Cir. 1971). Several of the above Fifth Circuit cases rely on Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) and Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) for these rulings.

In *Harris* the police found a registration certificate in an impounded auto. The policeman was attempting to roll up the window so as to protect the auto when he discovered a registration certificate in plain view. A po-

The testimony at the hearing on motion to suppress leaves some unanswered questions. At a subsequent trial or hearing the testimony of Officer Boarman should be obtained so as to clarify the evidence as to the appellant's admission. Also, further information should be obtained from Officer Olson as to the location and condition or position of the marijuana in the truck in relation to the taking of inventory. Thus, was it in plain view and subject to ready discovery in the course of inventory?[4]

The case at bar is a serious one involving as it does a violation of great magnitude. It deserves careful preparation and presentation together with specific findings on the crucial issues of fact. Because of that, the cause must be remanded for further proceedings or a new trial.

The judgment is, then, reversed and the cause is remanded for a new trial or other proceedings consistent with the views which are expressed herein.

lice regulation demanded that impounded vehicles be inventoried. The Court upheld the admissibility of the registration certificate. The Court, however, stated that:

> The admissibility of evidence found as a result of a search under the police regulation is not presented by this case. The precise and detailed findings of the District Court, accepted by the Court of Appeals,

were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody.

Harris v. United States, *supra*, at 236, 88 S.Ct. at 993.

4. It is difficult to understand why the officers would proceed without seeking a warrant in these complex circumstances.