**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James JENKINS, Jr.,**
**Defendant-Appellant.**

**No. 74–1567.**

United States Court of Appeals,
Tenth Circuit.

Argued May 1, 1975.

Decided Aug. 14, 1975.

Richard J. Smith, Asst. U. S. Atty., for plaintiff-appellee.

Winston Roberts-Hohl, Asst. Federal Public Defender, for defendant-appellant.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

James Jenkins, Jr., was convicted on a charge of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. Prior to trial Jenkins filed a motion to suppress. Upon hearing, this motion was denied and in the present appeal Jenkins contends that in denying his motion to suppress the trial court committed reversible error.

At the hearing on the motion to suppress a patrolman for the New Mexico State Police testified that he made a random stop of a vehicle bearing California license plates on Interstate Highway 40 just west of Tucumcari, New Mexico, for the purpose of making what he called a "routine registration check." The patrolman stated that prior to making the stop he had noticed nothing unusual or suspicious about the vehicle or the conduct of its driver, and that, as was his custom, on the day in question he made some fifteen to twenty random stops of a similar nature. The officer had noticed that the driver of the vehicle was a black male person and that there was a white male passenger in the car, and added that this had nothing to do with his decision to stop the vehicle.

The patrolman testified that he asked the driver, who was James Jenkins, Jr., for his driver's license, and the latter produced an expired New York driver's license. The patrolman then asked the driver to produce registration papers for the vehicle, and this he was unable to do. In connection with this latter request Jenkins volunteered that the car was a rental and that he had either lost or misplaced the rental contract. The patrolman then asked Jenkins to follow him to a local police station. En route the patrolman made a telephonic check with the National Crime Information Center and ascertained that the vehicle which Jenkins was driving had been recently stolen in Los Angeles, California. At the police station the patrolman advised Jenkins that the vehicle he was driving was a stolen car and that he was under arrest.

As indicated, the trial court denied the motion to suppress and in a trial to the court Jenkins was found guilty of transporting in interstate commerce a motor

vehicle which he knew to have been stolen. On appeal the sole issue is the legality of the "stop" made by the patrolman of the Jenkins driven vehicle. Jenkins contends that the stop was unreasonable and therefore in violation of his Fourth Amendment rights, and that the resultant fruits of this unlawful arrest were inadmissible in evidence. We do not agree.

In stopping Jenkins' vehicle the patrolman was acting pursuant to 64–3–11 and 64–13–49, New Mexico Statutes Annotated. 64–3–11 provides that every owner of a vehicle shall exhibit his vehicle registration papers "upon demand of any police officer." 64–13–49 provides that every driver shall display his driver's license "upon demand of a justice of the peace, a peace officer, or a field deputy or inspector of the division." However, even though the patrolman in the instant case may well have been acting in accord with New Mexico law, his actions must still comport with the requirements of the Fourth Amendment to the United States Constitution. In our view the stopping of the vehicle and the ensuing limited inquiry of the driver were not unreasonable and did not offend the Fourth Amendment.

We believe the present controversy is controlled by *United States v. Lepinski*, 460 F.2d 234 (10th Cir. 1972). In *Lepinski* we held that the stopping of a vehicle by a state police officer for the purpose of making a routine check of the driver's license and vehicle registration was lawful under New Mexico law and was not violative of federal constitutional standards. The *Lepinski* opinion does not indicate whether the stopping was a random one, though the record itself indicates that such was the case. In any event there is nothing in the *Lepinski* opinion to indicate that the stopping of the vehicle was anything but a random stopping. In other words, the stopping in *Lepinski* was not the result of a roadblock, where all cars were being stopped, nor was there anything suspicious about the vehicle or its driver which prompted the police officer to select that particular vehicle for a check of driver's license and registration papers. It was a random stopping, just as is true in the instant case. So, in our view, *Lepinski* controls the present appeal, unless we be inclined to reexamine the rule of *Lepinski*, which counsel asks that we do. Recognizing that there is authority to the contrary,[1] we are disinclined to reconsider our holding in *Lepinski*, and we choose to adhere to it as representing the Tenth Circuit law on this subject.

Counsel suggests that the present factual situation more closely resembles *United States v. Fallon*, 457 F.2d 15 (10th Cir. 1972), and *United States v. McDevitt*, 508 F.2d 8 (10th Cir. 1974), than *Lepinski*. We do not agree. In *Fallon*, which antedated *Lepinski*, we found that there were "articulable facts" which justified the initial stopping of the vehicle and the limited investigation which ensued. Hence, we said that we did not there have to determine whether the initial stopping of the vehicle under New Mexico statutory law for the purpose of making a license and registration check was constitutional. Then came *Lepinski*, which held that there was no violation of constitutional standards where a state police officer in New Mexico stopped the driver of a motor vehicle for the purpose of making a routine check of driver's license and vehicle registration on a random, or arbitrary basis, i. e., the officer having no reasonable suspicion that any law had been broken.

It is true that in *McDevitt* there is language to the effect that the mere stopping of a vehicle for the purpose of checking registration papers may not be arbitrary and must be based on "reasonable ground," if not probable cause. However, that language must be viewed in context. In that case attention was primarily centered on a subsequent search of the vehicle which disclosed 800

---

1. *People v. Ingle*, 36 N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39 (1975), and *Commonwealth v. Swanger*, 300 A.2d 66 (Pa.1973), *rehearing* *granted*, and second opinion appears at 453 Pa. 107, 307 A.2d 875 (1973).

pounds of marijuana. An important distinction between *McDevitt* and both *Lepinski* and the present case is that in *McDevitt* the routine inquiry made after the random stopping of a vehicle revealed that the driver's papers were in order, but notwithstanding such fact the detention continued. In both *Lepinski* and the instant case, however, this routine inquiry immediately revealed that the papers were not in order, to the end that in the present case when Jenkins exhibited an expired driver's license and no registration papers, he was subject to immediate arrest. And of course in the instant case we are concerned only with a stopping and a brief inquiry. There is nothing in the record before us to indicate that there was any search of the vehicle at the time of the initial stopping and inquiry. Finally, in *McDevitt* reference was made to *Lepinski*, with no suggestion that *McDevitt* was in anywise undercutting the rule of *Lepinski*. For all these reasons we believe the instant case is controlled by *Lepinski*.

The very recent case of *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, decided June 30, 1975, indicates to us the correctness of the *Lepinski* rule. In *Brignoni-Ponce* the Supreme Court held that the random stopping of vehicles by border patrol agents to make inquiry of its occupants as to citizenship was violative of the Fourth Amendment, in the absence of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." However, in a footnote the Court in *Brignoni-Ponce* noted that border patrol agents serve a special function and have no part in enforcing laws that regulate highway use. In this context the court declared as follows:

" * * * Our decision thus does not imply that state and local enforcement agencies are without power to conduct such limited stops as are necessary to enforce laws regarding driv-

er's licenses, vehicle registration, truck weights, and similar matters."

Judgment affirmed.