UNITED STATES of America, Plaintiff-Appellee,

v.

Alex Daniel MILLAR, Defendant-Appellant.

No. 75–1788.

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1976.

Alison K. Schuler, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for plaintiff-appellee.

Larry L. Debus, Phoenix, Ariz. (Robert J. Lyman of Debus, Busby & Green, Ltd., Phoenix, Ariz., on the brief), for defendant-appellant.

Before SETH, HOLLOWAY and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The issue presented in this appeal is the legality of a search of a U-Haul trailer in which 780 pounds of marijuana having a street sale value of approximately $200,000 was seized. In our view the search was a proper one, and the conviction should be affirmed.

Alex Daniel Millar was driving a 1975 Chrysler pulling a U-Haul trailer in an easterly direction on Interstate Highway 40 approaching Gallup, New Mexico. The New Mexico State Police had set up a roadblock a few miles west of Gallup, New Mexico and were stopping automobiles for the purpose of checking driver's licenses and vehicle registrations. Officer Steve Herrera stopped Millar's vehicle and asked to see his driver's license and vehicle registration. Millar exhibited his license and registration papers to Officer Herrera, and such were found to be in order. As Millar rolled down the car window in order to speak to Officer Herrera, the latter detected the odor of marijuana, which he recognized by virtue of his past training and experience, emanating from the car. Herrera, after some conversation, obtained Millar's consent to search the car. This search revealed the presence

of marijuana seeds on the floor in the front of the car. Millar's reaction to this discovery was that marijuana seeds simply could not be there because he had just cleaned the carpet with a toothbrush. Millar would not give Herrera permission to search the U-Haul trailer. Accordingly, Herrera obtained a search warrant from a state magistrate in Gallup, New Mexico authorizing him to conduct a search of both the automobile and the U-Haul trailer. This search disclosed the presence of a small amount of marijuana in Millar's suitcase found in the automobile, and 780 pounds of bricked marijuana was also found in the trailer. The 780 pounds of marijuana found in the trailer formed the basis for the present prosecution.

Prior to trial Millar filed a motion to suppress the use at trial of the marijuana taken from his U-Haul trailer. In the motion to suppress it was alleged that the contraband found in Millar's trailer had been obtained "as the result of an unlawful search and seizure, all in violation of the Constitution and laws of the United States." At the hearing held before trial, both Herrera and Millar gave their respective versions of what had transpired at the roadblock west of Gallup, New Mexico. Based on such testimony the trial court denied the motion to suppress and at trial the marijuana taken from Millar's trailer was received into evidence. A jury found Millar guilty of knowingly possessing the 780 pounds of marijuana with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and this appeal followed.

Millar contends the search of his trailer was unlawful for three different reasons: (1) The initial stopping of his vehicle was arbitrary and merely a pretext for a general search, and hence everything that thereafter ensued was tainted by the illegality of the initial stop; (2) the affidavit presented to the New Mexico magistrate was insufficient to authorize the issuance of the search warrant; and (3) the warrant was issued by a magistrate for the State of New Mexico, who was not a judge of a court of record, and hence there was non-compliance with

Fed.R.Crim.P. 41(a). In our view none of these objections warrants an invalidation of the search here complained of and we therefore affirm.

■ We have previously held that local state police may stop a moving vehicle for a routine driver's license and vehicle registration check. Such stops may be at random, or at a roadblock for that matter, and without probable cause, or even suspicion, to believe that the driver's license or the registration papers are not in order. *United States v. Jenkins,* 528 F.2d 713 (10th Cir. 1975) and *United States v. Lepinski,* 460 F.2d 234 (10th Cir. 1972). *See also United States v. Brignoni-Ponce,* 422 U.S. 873, 883 n. 8, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). It is Millar's position that the stopping of his vehicle by the New Mexico state police to check his driver's license and vehicle registration papers was but a mere pretext to look for some other and more serious criminal activity.

■ Although there is absolutely nothing in the present record to indicate that Herrera's initial stop of Millar's car was a mere ruse, this particular argument is apparently based on the candid responses of Officer Herrera made both at the pre-trial suppression hearing and at the trial proper. On both occasions Herrera testified that although his initial stopping of the Millar vehicle, and trailer, was for the specific purpose of checking driver's license and registration papers, he did not propose to close his eyes, or his nose, we would add, should other criminal activity come to his attention during the process of checking the driver's license and registration papers. We do not think such a mental frame of mind on the part of Herrera vitiates the legality of the initial stop of Millar's vehicle. The trial court did not find that Herrera stopped Millar's vehicle on the mere pretext of checking his driver's license, when in reality he was searching for bigger game. Nor was Millar singled out for a stopping. The roadblock had been in effect for some time before Millar arrived at the scene. Many cars, though not necessarily all eastbound traffic, were being stopped

for inspection of driver's licenses and vehicle registration papers. Commercial vehicles, for example, were not being stopped. And when traffic backed up, some cars were let through with only a limited check. The roadblock was about 17 miles from the New Mexico-Arizona boundary, and out-of-state cars were in particular being checked out. All things considered, we think the initial stop of Millar's car is well within the rule of *Jenkins* and *Lepinski.* We do not believe *United States v. McDevitt,* 508 F.2d 8 (10th Cir. 1974) to be apposite. Like the trial court, we conclude that the stopping of Millar's vehicle to check his driver's license and registration papers was lawful and is not such as to render unlawful the ensuing search, be it of the automobile or the trailer.

■ Millar next attacks the sufficiency of the affidavit which Herrera presented to the state magistrate, who, in turn, issued a search warrant authorizing the search of the U-Haul trailer. In his affidavit Herrera stated that on stopping Millar's vehicle "for a routine traffic check," he had detected the definite odor of marijuana coming from Millar's automobile, and in a search, which he made with Millar's permission, he had found marijuana seeds on the floorboard of the vehicle. Does such equate with probable cause to believe that there might well be marijuana in the trailer? We think it does. Millar would isolate the trailer from the automobile that was pulling the trailer. This is unrealistic. The automobile and the trailer constituted a unit. The automobile was pulling the trailer from Arizona and the ostensible destination was somewhere in the midwest. There is no dispute but that Millar was in possession and control of both the automobile and the trailer. The instant case comes well within *United States v. Bowman,* 487 F.2d 1229 (10th Cir. 1973), where we held that the smell of marijuana by one who has, through experience, learned to detect the odor of marijuana is sufficient to establish probable cause to search an automobile and to arrest the driver upon discovery of marijuana in the vehicle. In this regard, see also *United States v. Sigal,* 500 F.2d 1118 (10th Cir.),

*cert. denied,* 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974), and *United States v. McCormick,* 468 F.2d 68 (10th Cir. 1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973).

The instant case is distinguishable from *United States v. Rodriguez,* 525 F.2d 1313 (10th Cir. 1975). In *Rodriguez* the defendant was a paying passenger on a commercially operated bus which was pulling a U-Haul trailer. Rodriguez had no possession or control of the trailer—he was only a paying passenger on a bus. In such circumstance we held that the finding of marijuana under a tarp in the trailer did not give rise to probable cause to search the baggage of the twelve paying passengers in the bus. Here Millar was in sole possession and control of both the automobile and the U-Haul trailer and the contents of each. Officer Herrera detected the odor of marijuana emanating from the Millar vehicle and he found marijuana seeds on the floorboard of the car. Such would give rise to probable cause to search, for example, the trunk of the car. *United States v. Solomon,* 528 F.2d 88 (9th Cir. 1975) and *United States v. Cage,* 494 F.2d 740 (10th Cir. 1974). In our view, the search of a trailer is analogous to the search of a car trunk.

Fed.R.Crim.P. 41(a) provides that a search warrant may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property is located. The warrant in the instant case was issued by a local police magistrate and his was not a court of record. Millar contends that such failure to comply with Rule 41(a) renders the evidence seized in the search inadmissible in a subsequent federal prosecution. We do not agree.

■ If a search is a state search, with minimal or no federal involvement, the warrant need only to conform to federal constitutional requirements, and the fact that the warrant issued from a court not of record does not render the fruits of the search inadmissible in a subsequent federal criminal prosecution. *United States v. Johnson,* 451 F.2d 1321, 1322 (4th Cir. 1971), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1298, 31

L.Ed.2d 480 (1972) and *United States v. Coronna,* 420 F.2d 1091 (5th Cir. 1970). *See also United States v. Bedford,* 519 F.2d 650, 656 n. 14 (3d Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). However, on the other hand, even though the search is made pursuant to a state warrant, if the search is nonetheless "federal in character," then the legality of the search would be conditioned upon a finding that the warrant satisfied federal constitutional requirements and certain provisions of Fed.R.Crim.P. 41 "designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *United States v. Sellers,* 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

■ The search here involved was purely a state search, with no federal involvement. A state highway patrolman obtained the warrant from a state magistrate. The warrant was executed by the state patrolman. No federal official played any role in either obtaining the search warrant or assisting in the search that followed. This distinguishes the instant case from *Navarro v. United States,* 400 F.2d 315 (5th Cir. 1968), where the search in question was deemed to be a federal search because federal agents had participated in the search. In such circumstance the Fifth Circuit held that the requirement of Rule 41(a) that the warrant, if it be issued from a state court, must issue from a court of record, had not been met. We believe it to be implicit in *Navarro* that if the search be purely a state search, without federal participation, conducted pursuant to a state warrant relating to a state crime and issued by a court empowered to do so under local state law, then the fruits of that search would be admissible in evidence in a subsequent federal prosecution, even though the warrant did not issue from a court of record. We note that subsequent to *Navarro,* the Fifth Circuit held that even in a "federal" search, if a warrant be issued under the authority of state law, then every requirement of Rule 41 is not a *sine qua non* to the use in federal court proceedings of the fruits of the search based on such warrant. *United States v. Sellers,* 483 F.2d 37, 43 (5th Cir. 1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

In the instant case we are concerned with a state search based on a state warrant which issued from a court authorized to do so under New Mexico law. As we have previously held, the search itself did not offend the Fourth Amendment. In such circumstance, under the authorities above cited, the fact that the court issuing the warrant was not a court of record does not render the evidence obtained in the search inadmissible in a subsequent federal prosecution.

Our determination here that the fact that the search warrant issued from a court not of record does not render the fruits of that search inadmissible in a subsequent federal prosecution does not do violence to *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The holding in *Elkins* was that evidence obtained in a purely state search, which if conducted by federal officers would have violated the defendant's Fourth Amendment rights, is inadmissible over defendant's timely objections in a subsequent federal criminal proceeding. Here there was no violation of Millar's Fourth Amendment rights. This was a purely state search which did not offend the Fourth Amendment. The fruits of such search were properly admitted in the instant case.

Judgment affirmed.