**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Scott Stine CHEATWOOD,
Defendant-Appellant.**

**No. 77–1271.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 17, 1978.

Decided May 15, 1978.

William M. Griffith, Denver, Colo., for defendant-appellant.

Larry D. Patton, U. S. Atty., Oklahoma City, Okl. (John E. Green, Acting U. S. Atty. and Susie Pritchett, Asst. U. S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Scott Stine Cheatwood appeals from his conviction following trial to the court on two counts contained in an Indictment charging him with having, on or about May 14, 1976, at Oklahoma City, Oklahoma, possessed a firearm, to-wit, a Bridge Gun Company, .410 gauge sawed-off shotgun which (a) was not registered to him in the National Firearms Registration and Transfer Record, all in violation of 26 U.S.C. §§ 5861(d) and 5871, and (b) was not identified by a serial number as required by 26 U.S.C. § 5842, all in violation of 26 U.S.C. §§ 5861(i) and 5871.

On the night of May 14, 1976, at about 9:40 p. m., two officers employed by the Oklahoma Highway Patrol, Troopers Gary Hall and F. E. Cope, were conducting a routine traffic patrol on Interstate 240 within Oklahoma City when they observed a vehicle being operated by Cheatwood straddling lane lines and weaving back and forth across the lanes of traffic. The officers drove their patrol car up beside the 1966 Oldsmobile vehicle being operated by Cheatwood. They observed that Cheatwood's vehicle was still weaving. They permitted Cheatwood's vehicle to pass their patrol car and after further observation the

officers pulled in behind Cheatwood's vehicle and stopped him.[1] Trooper Cope walked to the rear of Cheatwood's vehicle and asked Cheatwood to step from the vehicle and walk to the rear thereof where he requested to see Cheatwood's driver's license. At the same time Trooper Hall walked to the passenger side of the Cheatwood vehicle and, with the use of his flashlight, viewed the interior by looking through the windows. Hall saw that which appeared to him as a pistol protruding from underneath the driver's side in the front seat. Hall then proceeded around the front of the vehicle, opened the door on the driver's side, reached down and retrieved the pistol. After that Hall reached in again and stuck his hand underneath the driver's seat where he felt and retrieved the sawed-off shotgun which gave rise to the instant criminal proceedings.

Cheatwood filed a motion to suppress pursuant to Rule 41(e) of the Fed.R.Crim.P. directed to the use in evidence of the sawed-off shotgun based on his allegation of ". . . the unlawful search and seizure of the investigating officers without a search warrant, probable cause or consent by the defendant and the ensuing violation of defendant's fourth and sixth amendment rights under the U. S. Constitution." [R., Vol. I, p. 4.] The court received memoranda of the parties on the matter and entertained arguments of counsel on January 27, 1977. The court denied the motion and orally announced ". . . It appears to me that the weapon was legally seized and therefore is admissible in evidence. The Defendant appears to have been validly and properly stopped by the officers for a traf-

fic violation committed in their presence, and in these circumstances they had a right to stop the car. They then had a right to be around the car; they had a right to seize anything that was in plain view, as they had a right to be where they were, and this is what happened. They had a right to the arrest, they had a right to stop, they had a right to be around the car, they had a right to look in the car; and anything in plain view that would appear to be contraband, appear to be illegally present in the car, they had a right to seize it and this is what they did." [R., Vol. II, p. 18.] Thereafter, the trial court entered a formal Order denying the motion to suppress, citing to *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Miller*, 452 F.2d 731 (10th Cir. 1971), cert. denied 407 U.S. 926, 92 S.Ct. 2466, 32 L.Ed.2d 813 (1972); and *United States v. Alberty*, 448 F.2d 706 (10th Cir. 1971), for the rule that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. [R., Vol. I, pp. 10, 11.]

At trial, the Government presented the testimony of Troopers Hall and Cope and three other witnesses, together with physical evidence. Cheatwood did not testify and he did not present any evidence. The Government identified the firearm discovered in Cheatwood's vehicle, proved that it had not been registered pursuant to law and that it did not bear a serial number required by law.

On appeal, Cheatwood contends that the trial court erred in: 1) denying his motion

---

1. At oral argument, counsel for Cheatwood indicated that the two police officers gave inconsistent or contradictory testimony relative to the manner Cheatwood was operating his vehicle. Our review of the record belies this contention. In describing the manner in which Cheatwood was driving, Officer Hall, when testifying at trial, stated that ". . . we observed an Oldsmobile straddling the lane lines and weaving in his lane." [Vol. III, p. 5] On cross examination Hall testified that Cheatwood's vehicle was traveling ". . . quite a bit below the posted speed limit." [Vol. III, p. 10] He testified further that "[t]he reason why

we stopped him, mainly, was because of his weaving and straddling the lanes of traffic." [Vol. III, p. 15] Officer Cope testified "[w]e noticed that the vehicle was traveling slower than the normal flow of traffic, was weaving in the lane and occasionally crossing in the second lane from the right, partially into that point, and then weaving back into the right lane." [Vol. III, p. 29] Regarding the reason the officers stopped Cheatwood, Cope testified on cross examination that ". . . [w]e stopped the vehicle for the erratic driving." [Vol. III, p. 40].

to suppress, 2) admitting the shotgun in evidence at trial, 3) finding that there was probable cause on the part of the officers to stop Cheatwood's vehicle, and 4) pursuing its zealous questioning, thus assuming the role of prosecutor.

### I. and II.

We will first consider Cheatwood's issues (1) and (2) jointly inasmuch as they respectively reach the same ultimate contention, i. e., that the search of the automobile and the seizure by the troopers of the sawed-off shotgun from Cheatwood's vehicle were violative of his rights secured by the Fourth Amendment protecting "persons, houses, papers and effects against unreasonable searches and seizures." Cheatwood argues that, in general, a search of a motor vehicle without a warrant is unreasonable unless there is probable cause to search and either the search was incident to a lawful arrest or it was impracticable to obtain a warrant.

The Supreme Court has traditionally distinguished between warrantless searches of automobiles and homes and offices in relation to the Fourth Amendment. The Court has upheld warrantless searches of automobiles in circumstances which would require a search warrant if conducted in a home or office predicated upon the inherent mobility of automobiles creating exigent circumstances, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the fact that the use of an automobile involves considerably less expectation of privacy than that expected in one's home or office, *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and because motor vehicles are subject to pervasive and continuing governmental regulation and control as a result of the need for police investigations of accidents and safety violations. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), police procedures involving routine "caretaking" such as inventorying the contents of a motor vehicle lawfully impounded were not violative of the Fourth Amendment, even though a warrantless inventory search may disclose evidence leading to a subsequent prosecution. It is significant that the court observed, in part, that "the inventory itself was prompted by the presence in *plain view* of a number of valuables inside the car." 428 U.S., at 375, 376, 96 S.Ct., at 3099. [Emphasis supplied.]

The trial court properly applied the "plain view" doctrine in the instant case. That doctrine was first announced in *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). There the court held that incriminating objects falling in the plain view of an officer who has a right to be in the position to have that view are all subject to seizure and may be introduced in evidence because the "fruit" was not the product of a search. The doctrine was again recognized and reaffirmed in *Coolidge v. New Hampshire, supra*.

This court has consistently held that incriminating objects which are visible and accessible, falling in plain view of an officer who has the right to be in the position to have the view, are subject to seizure and may be introduced in evidence. *United States v. Anderson*, 468 F.2d 1280 (10th Cir. 1972); *United States v. McCormick*, 468 F.2d 68 (10th Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1972); *United States v. Miller*, 452 F.2d 731 (10th Cir. 1971).

In *United States v. Booker*, 461 F.2d 990 (6th Cir. 1972), the court said:

. . . Flashing the flashlight in the rear of the car did not constitute a search of the car. *United States v. Kim*, 430 F.2d 58, 61 (9th Cir. 1970), and cases therein cited. Six inches of the rifle barrel was in plain view and was subject to seizure. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 . . . Since it would not constitute a search for the officer to observe objects in plain

view in the automobile in daylight, it ought not to constitute a search for him to flash a light in the car as he was walking past in the night season. 461 F.2d at 992.

*See also: United States v. Finnegan*, 568 F.2d 637 (9th Cir. 1977) [routine traffic stop—plain view discovery]; *United States v. Ricard*, 563 F.2d 45 (2nd Cir. 1977) [search may precede arrest where officer had cause to arrest for speeding even if he initially determined not to do so]; *Effler v. Rose*, 535 F.2d 980 (6th Cir. 1976), *cert. denied*, 429 U.S. 982, 97 S.Ct. 496, 50 L.Ed.2d 591 (1976); *United States v. Robinson*, 535 F.2d 881 (5th Cir. 1976); *United States v. Webb*, 533 F.2d 391 (8th Cir. 1976); *United States v. Hood*, 493 F.2d 677 (9th Cir. 1974), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974); *Williams v. United States*, 404 F.2d 493 (5th Cir. 1968).

Cheatwood places considerable importance upon the fact that Officer Hall, at the evidentiary hearing on the motion to suppress, testified that he observed the shotgun protruding from under the driver's seat but that at trial proper he testified that he saw the pistol (revolver) rather than the shotgun. It is Cheatwood's contention that because Hall did not see the shotgun, the "plain view" doctrine cannot apply under any circumstance. We disagree.

■ There were no constitutional infirmities in the circumstances involving the detection of the pistol by Officer Hall and we view his action which resulted in the discovery of the shotgun by reaching under the front seat of the vehicle in search for the presence of additional weapons as entirely justified. It was proper in relation to protection of the persons of the two police officers which necessarily involves the possibility that Cheatwood may have attempted re-entry of the vehicle to obtain the weapons for use against the officers. It matters not that Cheatwood was not thereafter arrested for traffic violations.

In *United States v. Omalza*, 484 F.2d 1191 (10th Cir. 1973), we said:

. . . The officer neither searched nor seized when he looked into appellant's car. The presence in the car of what appeared to be a pistol justified the opening of the car door and a further examination . . . . 484 F.2d, at 1192.

## III.

■ Cheatwood contends that the court erred in finding that the police officers had probable cause to stop his vehicle on the evening of May 14, 1976. This contention is without merit.

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court upheld the full-custody warrantless arrest, on probable cause grounds, of Robinson by Officer Denks under these circumstances: Officer Denks was operating his patrol car at about 11:00 p. m. in Washington, D. C., when he observed Robinson driving a 1965 Cadillac. Some four days before Denks had checked on Robinson's operator's permit and this investigation resulted in ". . . reason to believe that respondent was operating a motor vehicle after the revocation of his operator's permit." 414 U.S., at 220, 94 S.Ct., at 469. The Court held that there was probable cause to stop and arrest Robinson. Beyond this, however, the Court upheld a search of Robinson's person as reasonable. The search resulted in discovery of a cigarette package on Robinson's person containing heroin, the possession of which Robinson was subsequently charged and convicted in federal court. The dissenters in *Robinson, supra*, recognized that a "stop" of a vehicle by a police officer for a "routine spot check" relative to an operator's permit and automobile registration card is valid. *See* 414 U.S., at 239, 94 S.Ct. 467.

In a companion case to *Robinson*, the Supreme Court held in *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), that the following facts gave rise to probable cause to effect a stop and arrest:

At approximately 2 a. m. on January 12, 1969, Lieutenant Paul R. Smith, a uniformed municipal police officer of Eau Gallie, Florida, was on a routine patrol in an unmarked squad car when he observed

a 1953 white Cadillac, bearing New York license plates, driving south through town. Smith observed the automobile weave across the center line and back to the right side of the road 'three or four' times. Smith testified that he observed the two occupants of the Cadillac look back; after they apparently saw the squad car, the car drove across the highway and behind a grocery store, and then headed south on another city street.

At that point Smith turned on his flashing light and ordered the Cadillac over to the side of the road. After stopping the vehicle, Smith asked . . . the driver, to produce his operator's license. Petitioner informed Smith that he was a student and had left his operator's license in his dormitory room . . . Petitioner was then placed under arrest for failure to have his vehicle operator's license in his possession. [Underlining supplied.] 414 U.S., at 261, 262, 94 S.Ct., at 490.

This court, in *United States v. McDevitt*, 508 F.2d 8 (10th Cir. 1974), set forth the rule applicable to the case at bar in terms of the reasonableness of the stop of Cheatwood's vehicle by the officers:

In order for an officer to stop and search a vehicle there must exist some basis for suspicion, at least, that the driver has violated the law even though the facts need not be sufficient to establish probable cause. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 . . .; *Stone v. Patterson*, 468 F.2d 558 (10th Cir. 1972); *United States v. Self*, 410 F.2d 984 (10th Cir. 1969). Cf. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 . . .

Similarly, an automobile may be stopped for inspection without probable cause, but the act of stopping may not be arbitrary. Thus, our court has said that 'even an investigatory detention must be based on reasonable ground, if not probable cause.' *See United States v. Fallon*, 457 F.2d 15, 18 (10th Cir. 1972). 508 F.2d, at 10, 11.

Other decisions of this court upholding temporary detentions and investigatory stops are *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973); *United States v. McCormick, supra; United States v. Lepinski*, 460 F.2d 234 (10th Cir. 1972); *United States v. Fallon*, 457 F.2d 15 (10th Cir. 1972).

## IV.

◼ Cheatwood contends that the trial court's "zealous" questioning amounted to the judge assuming the role of the prosecutor. We are not impressed.

Our review of the record discloses simply that the trial court directed certain questions to witnesses who were obviously confused or likely to be confused because of the fact that they had not been adequately examined. We have often held that the trial court is not a mere moderator, but is the governor of the trial. One of the primary purposes of the criminal justice system is that of seeking out the truth. The trial court has the power to direct the trial along recognized lines of procedure and to interrogate witnesses in a manner reasonably thought to bring about a just result. Fed.Rules Evid.Rule 614(b), 28 U.S.C.A.; *United States v. Latimer*, 548 F.2d 311 (10th Cir. 1977); *United States v. Articles of Device, Etc.*, 481 F.2d 434 (10th Cir. 1973); *Lowther v. United States*, 455 F.2d 657 (10th Cir. 1972), *cert. denied*, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972); *United States v. Wheeler*, 444 F.2d 385 (10th Cir. 1971). The record reflects that if the trial court had not pursued certain interrogation, the search for truth may not have been served.

The totality of the evidence against Cheatwood was overwhelming. Where the evidence against an accused is strong, as here, it is incumbent upon the appellant to establish trial court prejudice before the "plain error" rule can apply. *United States v. Bishop*, 534 F.2d 214 (10th Cir. 1976); *Hall v. United States*, 404 F.2d 1367 (10th Cir. 1969); Fed.R.Crim.P., Rule 52(a), 18 U.S.C.A.

WE AFFIRM.